# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

16TH & K HOTEL, LP,

        Plaintiff,

        v.

COMMONWEALTH LAND TITLE
INSURANCE COMPANY, *et al.*,

        Defendants.

Civil Action No. 11-759 (BAH)
Judge Beryl A. Howell

## MEMORANDUM OPINION

The Plaintiff 16th & K Hotel, LP, is the owner of the St. Regis Hotel at 16th and K Streets,
N.W. in Washington, D.C. The plaintiff's plans to expand the hotel to an adjacent lot literally hit
an unexpected brick wall, which had not been disclosed on the surveys relied upon in obtaining
financing for the construction. In this case, the plaintiff sues the surveyors and the title insurer
for over $23,000,000 in damages due to the alleged nondisclosure on the surveys of a party wall
with an adjoining property. Pending before the Court is the motion by the defendant title insurer,
Commonwealth Land Title Insurance Company (hereinafter "Commonwealth"), to dismiss the
action against it, pursuant to Federal Rule of Civil Procedure 12(b)(7), for failure to join the
plaintiff's lenders as "necessary parties in this case." Commonwealth P. & A. Supp. Mot.
Dismiss, ECF No. 8, at 2-3. For the reasons set forth below, this motion is DENIED.[1]

---

[1] The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the amount in
controversy exceeds the jurisdictional limit and the parties have complete diversity of citizenship.

# I.    BACKGROUND

The plaintiff, a Delaware limited partnership, purchased the St. Regis Hotel, located at 923 16th Street, N.W., in 2005 and thereafter explored the feasibility of expanding the hotel's facilities by purchasing an adjacent lot with a townhouse at street address 1528 K Street, N.W. (referred to as "Parcel Two" in this litigation). Compl. ¶¶ 9-10, 12-13.[2] From 2005 through 2007, the plaintiff contracted with the surveyors, defendant Bruce C. Landes, who is a resident of Virginia, and defendant Landmark-Fleet Surveyors, P.C., a Virginia professional corporation with its principal place of business in Virginia, to prepare a series of certified surveys of Parcel Two. *Id.* ¶¶ 14, 16, 51; Commonwealth Cross-Claim, ECF No. 15, ¶¶ 2-3. The defendant surveyors supplied surveys of Parcel Two in December 2005, November 2006, December 2006, April 2007, and July 2007. Compl. ¶¶ 16, 51; *see also* Commonwealth Cross-Claim, ECF No. 15, ¶¶ 8-13. These surveys consistently showed that the townhouse on Parcel Two was a "free-standing structure, without material easements or encroachments thereon." Compl. ¶¶ 17, 51. The plaintiff "reasonably concluded" that the townhouse could be fully demolished and redeveloped as part of the needed hotel facilities and, consequently, in April 2006, purchased Parcel Two. *Id.* ¶¶ 32-33. Thereafter, in 2006, the plaintiff commenced extensive renovations on the St. Regis, plans for which included demolition of the townhouse on Parcel Two and reconstruction of an addition to the hotel on that parcel. *Id.* ¶¶ 32, 35.

In connection with a modification of its construction financing, plaintiff purchased from Commonwealth, a Nebraska corporation with its principal place of business in Jacksonville, Florida, an Owner's Policy of Title Insurance, Policy No. 08-001112, issued on April 2, 2008, for an insurance amount of $172 million (hereinafter the "Owner's Policy"). *Id.* ¶ 38;

---

[2] The Complaint also indicates that Parcel Two "bears a street address of 1522 K Street, N.W.," Compl. ¶ 22, but this address is elsewhere identified as that of the property adjoining and sharing a party wall with Parcel Two. *See* Commonwealth Cross-Claim, ECF No. 15, ¶ 8.

Commonwealth Cross-Claim, ECF No. 15, ¶ 1; Compl., Ex. A, Owner's Policy of Title Insurance, at 4. The Owner's Policy insured plaintiff "against, *inter alia*, loss or damage sustained or incurred by the reason of defect in or lien or encumbrance on or unmarketability of title for [the St. Regis] and Parcel Two." Compl. ¶¶ 37-38; *see also* Commonwealth Answer, ECF No. 15, ¶ 38 ("Commonwealth admits that it sold Owner's Policy No. 08-001112 to the Plaintiff").[3] The Owner's Policy is a binding agreement between the plaintiff and defendant Commonwealth. Compl. ¶ 67; Commonwealth Answer, ECF No. 15, ¶ 67.

The Owner's Policy includes a so-called "ALTA 16 Mezzanine Endorsement," which provides that Barclays Capital Real Estate Finance, Inc. (hereinafter "plaintiff's Mezzanine Lender") has an interest in some or all of the proceeds of any claim under the Owner's Policy up to the amount of the outstanding indebtedness under the Mezzanine Loan between the plaintiff and the Mezzanine Lender. Compl. Ex. A, Owner's Policy of Title Insurance; Commonwealth Mot. Dismiss, ECF No. 8, Ex. A-1, Mezzanine Endorsement, at 1-2; Commonwealth Cross-Claim, ECF No. 15, ¶ 17.[4] The Mezzanine Endorsement states, in relevant part, that:

> 2.(a) [the Plaintiff] has assigned to the Mezzanine Lender the right to receive amounts otherwise payable to the insured under this policy, not to exceed the outstanding indebtedness under the Mezzanine Loan; . . . .

---

[3] A year earlier, in February 2007, Commonwealth had issued a Loan Policy of Title Insurance, Policy No. 06-1574, to Barclay's Capital Real Estate, Inc. (hereinafter "Plaintiff's Mortgage Lender") for an insurance amount of $135 million ("Loan Policy"). Pl.'s P. & A. Opp'n Mot. Dismiss, ECF No. 21, at 2 n.2 (hereinafter "Pl.'s Opp'n Mem."); Commonwealth Cross-Claim, ECF No. 15, ¶ 15. The Loan Policy is not at issue in any count of the Complaint. Pl. Opp'n Mem., at 2 n.2.

[4] "[A] mezzanine loan is secured not by the real property itself, but by stock of or some ownership interest in the company that owns the real property. In the area of real estate finance, a mezzanine loan is typically used by developers to secure supplementary financing for development projects in cases where the primary mortgage or construction loan equity requirements are larger than [ten percent]." *Ramco Hartland L.L.C. v. Landmark/Mansour Dev. LLC*, No. 294877, 2011 Mich. App. LEXIS 233, at *9-10 (Mich. Ct. App. Feb. 8, 2011) (alteration in original) (internal quotations and citations omitted).

6. (a) that the amount of insurance under this policy shall be reduced by any amount [Commonwealth] may pay under any policy insuring a mortgage to which exception is taken in Schedule B . . . and the amount so paid shall be deemed a payment under this policy; . . .

7. If the insured, the Mezzanine Lender or others have conflicting claims to all or part of the loss payable under the Policy, [Commonwealth] may interplead the amount of the loss into Court. The insured and the Mezzanine Lender shall be jointly and severally liable for [Commonwealth's] reasonable cost for the interpleader and subsequent proceedings, including attorney's fees. [Commonwealth] shall be entitled to payment of the sums for which the Insured and Mezzanine Lender are liable under the preceding sentence from the funds deposited into Court, and it may apply to the Court for their payment.

Commonwealth Mot. Dismiss, ECF No. 8, Ex. A-1, Mezzanine Endorsement, at 1-2.

In late April 2008, while construction on Parcel Two was underway, the plaintiff first discovered the existence of the party wall and immediately stopped construction. Compl. ¶ 52; Commnwealth Cross-Claim, ECF No. 15, ¶ 18. The party wall, which is 12 inches wide, serves as both the east wall of the townhouse on Parcel Two and the west wall of the office building on the adjoining property at 1522 K Street, N.W. Compl. ¶ 52; *see also* Commonwealth Cross-Claim, ECF No. 15, ¶ 8. The existence of the party wall, which was not disclosed on any of the surveys supplied by the defendant surveyors, rendered Parcel Two "substantially useless" to the plaintiff. Compl. ¶¶ 53, 59. The plaintiff claims that it has incurred damages in excess of $23,000,000 due to the costs of repairing the damage to the party wall, restoring the townhouse

on Parcel Two and its inability to meet its deadlines and obligations under the original construction plans. *Id*. ¶¶ 58, 73.

Subsequent to the discovery of the party wall, in January 2009, Barclays Capital Real Estate, Inc., which was the plaintiff's Mortgage Lender, and Barclays Capital Real Estate Finance, Inc., which was the plaintiff's Mezzanine Lender (hereinafter collectively referred to as "plaintiff's Lenders"), notified Commonwealth of their claims for reimbursement of their losses against Commonwealth under both plaintiff's Owner's Policy and under the Loan Policy. *See* Commonwealth Mot. Dismiss, ECF No. 8, Ex. B, Notice of Claim Letter from plaintiff's Lenders to Commonwealth dated Jan. 16, 2009, at 1-2;[5] Commonwealth Cross-Claim, ECF No. 15, ¶¶ 19-20.[6] Both of the plaintiff's Lenders are Delaware corporations, with their principal place of business in New York. Commonwealth P. & A. Supp. Mot. Dismiss, ECF No. 8, at 2.

According to the plaintiff, a "Substitute Trustees' Deed" indicates that, in March 2011, the plaintiff's Mortgage Lender recorded a Notice of Foreclosure with the District of Columbia Recorder of Deeds and, a month later, sold "the subject real property"[7] at public auction for $25,000,000 to STR DC, LLC, a Delaware limited liability company, which thereafter assigned its right, title and interest to SRDC8 OWNER, LLC. *See* Pl.'s P. & A. Opp'n Mot. Dismiss, ECF

---

[5] Commonwealth indicates that "Barclays" may have assigned its loan to a third party, whose identity is likely known by the plaintiff, but does not make clear whether this "Barclays" reference is to one or both of plaintiff's Lenders. Commonwealth P. & A. Supp. Mot. Dism., ECF No. 8, at 2.

[6] Commonwealth asserts that it determined that the plaintiff's loss was $141,114.00, an amount which it has offered and continues to be willing to pay to the plaintiff or its lender, whichever is entitled to payment. Commonwealth Cross-Claim, ECF No. 15, ¶ 21.

[7] While the Court assumes that the plaintiff refers, in whole or part, to Parcel Two, this is not clear from the Substitute Trustees' Deed, which pertains to property on lot numbered 65 in square numbered 199, as per plat recorded in the Office of the Surveyor for the District of Columbia. Pl.'s Opp'n Mot. Dismiss, ECF No. 21, Ex. A, Substitute Trustees' Deed, at 4. This lot number, however, differs from that provided for Parcel Two in other documentation provided by the parties. *Cf.* Compl. ¶ 13 (Parcel Two is on lot 814 in square numbered 199); Commonwealth Reply Supp. Mot. Dismiss, ECF No. 22, Ex. A, Deed of Trust between the plaintiff and Mortgage Lender, at 27 (same).

No. 21 (hereinafter "Pl.'s Opp'n Mem."), at 3; Pl.'s Opp'n Mot. Dismiss, ECF No. 21, Ex. A, Substitute Trustees' Deed.

Plaintiff initiated this suit in Superior Court of the District of Columbia on March 31, 2011, and the Defendant Commonwealth removed it to this Court on April 20, 2011. Notice of Removal, ECF No. 1, ¶ 1. The Complaint contains four counts, asserting, in Count I, breach of the Owner's Policy against defendant Commonwealth and, in Counts II through IV, negligence against the defendant surveyors. Compl. ¶¶ 66-100. On April 25, 2011, the defendant filed the pending motion to dismiss.[8] Commonwealth Mot. Dismiss, ECF No. 8.

## II. DISCUSSION

Defendant Commonwealth urges the Court either to require the plaintiff to join its Lenders as party plaintiffs or to dismiss this action since, without joinder of the plaintiff's Lenders, any judgment in this case will not accord complete relief among the existing parties, the plaintiff's Lenders' ability to protect their interests will be impaired, and defendant Commonwealth will be subject to "substantial risk of incurring inconsistent obligations." Commonwealth P. & A. Supp. Mot. Dismiss, ECF No. 8, at 1. The Court, however, is not persuaded that the plaintiff's Lenders are required parties in this action.

### A. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(7) permits dismissal of a complaint for failure to join a party under Rule 19, but courts are generally "reluctant to grant motions to dismiss of this type." 5C Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1359 (3d ed. 2004); FED. R. CIV. P. 12(b)(7). In evaluating the need for the absent person under Rule 12(b)(7),

---

[8] All three defendants, including Commonwealth, have filed answers to the Complaint, and Commonwealth has cross-claims against the surveyor co-defendants for negligent misrepresentation and negligence. *See* Commonwealth's Answer, Affirmative Defenses, and Cross-Claims, ECF No. 15; Bruce C. Landes and Landmark-Fleet Surveyors' Answer, ECF No. 10.

the court must accept as true the allegations in the complaint, and may also consider extrinsic evidence submitted by the parties. *Davis Cos. v. Emerald Casino, Inc.,* 268 F.3d 477, 479 n.2, 480 n.4 (7th Cir. 2001); *Raytheon Co. v. Cont'l Cas. Co.*, 123 F. Supp. 2d 22, 32 (D. Mass. 2000).

The burden is on the defendant seeking dismissal for failure to name an absent person to show "the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." *Citadel Inv. Grp., L.L.C. v. Citadel Capital Co*., 699 F. Supp. 2d 303, 317 (D.D.C. 2010) (quoting *Citizen Band Potawatomi Indian Tribe of Okla. v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994)); *see also Lenon v. St. Paul Mercury Ins. Co*., 136 F.3d 1365, 1372 (10th Cir. 1998); *Ilan-Gat Eng'rs, Ltd. v. Antigua Int'l Bank*, 659 F.2d 234, 242 (D.C. Cir. 1981). The moving party may carry its burden "by providing affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence." *Citadel Inv. Grp., L.L.C.*, 699 F. Supp. 2d at 317 (internal quotation marks omitted); *see generally* 5C Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1359 (3d ed. 2004). Thus, courts may consider both exhibits to pleadings and materials outside the pleadings in resolving a motion to dismiss under Rule 12(b)(7), without converting the motion into a Rule 56 motion for summary judgment. *Three Affiliated Tribes of the Fort Berthold Indian Reservation v. United States*, 637 F. Supp. 2d 25, 29 (D.D.C. 2009); *see also Anderson v. Hall*, 755 F. Supp. 2, 5 (D.D.C. 1991).

Federal Rule of Civil Procedure 19 prescribes a three-part test for determining whether litigation may proceed in the absence of a particular person. *Capitol Med. Ctr., LLC v. AmeriGroup Md., Inc.*, 677 F. Supp. 2d 188, 191-92 (D.D.C. 2010); *OAO Healthcare Solutions, Inc. v. Nat'l Alliance of Postal & Fed. Emps*., 394 F. Supp. 2d 16, 19 (D.D.C. 2005); *FDIC v.*

*Bank of N.Y.*, 479 F. Supp. 2d 1, 9 (D.D.C. 2007); *Pueblo of Sandia v. Babbitt*, 47 F. Supp. 2d 49, 52 (D.D.C. 1999). First, the Court must determine if the absent person is required for a just adjudication. *OAO Healthcare Solutions,* 394 F. Supp. 2d at 19. In making the determination of whether the absent person "must be joined," the court considers the factors set forth in Rule 19(a)(1). *Id.* Specifically, the court must consider whether "in that person's absence, the court cannot accord complete relief among existing parties" or proceeding would either (i) impair the absent person's ability to protect its interest or (ii) leave an existing party subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the absent person's interest in the action. FED. R. CIV. P. 19(a).

Second, after making the threshold determination that an absent person is required to be a party under Rule 19(a)(1), the Court must determine whether joinder of the person is feasible. FED. R. CIV. P. 19(b).

Finally, if the absent person required as a party cannot be joined, the court must determine whether in equity and in good conscience, the action should proceed among the existing parties or be dismissed. FED. R. CIV. P. 19(b). As the Supreme Court observed, "[r]equired persons may turn out not to be required for the action to proceed after all." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 863 (2008). Rule 19(b) outlines a nonexclusive set of "overlapping" factors to be considered in making this determination, including (1) the extent to which judgment rendered in the person's absence might be prejudicial to that person or existing parties; (2) "the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping of relief, or other measures;" (3) "whether a judgment rendered in the person's absence would be adequate;" and (4) "whether the plaintiff would have an adequate remedy if the action is dismissed for nonjoinder." FED. R. CIV. P. 19(b)(1)-(4); *see*

*also* Commentary to 1966 Amendment to FED. R. CIV. P. 19. "[M]ultiple factors must bear on the decision whether to proceed without a required person. This decision 'must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests.'" *Pimentel*, 553 U.S. at 863 (quoting *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 119 (1968)).

Applying each part of this test is a fact-specific inquiry that "can only be determined in the context of particular litigation." *Provident Tradesmens Bank & Trust Co.*, 390 U.S. at 118; *see also Kickapoo Tribe of Indians of the Kickapoo Reservation in Kansas v. Babbitt*, 43 F.3d 1491, 1495 (D.C. Cir. 1995) (Rule 19 calls for "a pragmatic decision based on practical considerations in the context of particular litigation"); *KPMG Fin. Advisory Servs.v. Diligence LLC*, No. 05-cv-2204, 2006 U.S. Dist. LEXIS 8241, at *6-8 (D.D.C. Feb. 14, 2006) (same); *Primax Recoveries, Inc. v. Lee*, 260 F. Supp. 2d 43, 50 (D.D.C. 2003) (same).

Based upon the record before the Court,[9] the plaintiff's absent Lenders are not required parties to this lawsuit. The Court need not therefore consider the second and third parts of the test under Rule 19, namely, whether joinder of the plaintiff's absent Lenders is feasible and, if infeasible, whether the case should be dismissed.

## B. DISCUSSION

The crux of defendant Commonwealth's motion is that the Owner's Policy obligates it to

---

[9] In addition to the pleadings, the parties have supplemented the record for this motion with the following six documents: (1) Owner's Policy of Title Insurance, Compl., Ex. A; Commonwealth Mot. Dismiss, ECF No. 8, Ex. A-1; (2) Loan Policy of Title Insurance, Commonwealth Mot. Dismiss, ECF No. 8, Ex. B at 5-37; (3) Plaintiff's Notice of Claim Letter dated August 14, 2008 to Commonwealth under the Owner's Policy, Commonwealth Mot. Dismiss, ECF No. 8, Ex. B, at 3-4; (4) Notice of Claim Letter from plaintiff's Lenders to Commonwealth dated Jan. 16, 2009, Commonwealth Mot. Dismiss, ECF No. 8, Ex. B, at 1-2; (5) Substitute Trustees' Deed dated May 12, 2011 for Lot numbered 65 in Square numbered 199, Pl.'s Opp'n Mot. Dismiss, ECF No. 21, Ex. A; (6) Construction Deed of Trust dated Feb. 1, 2007 from plaintiff, as borrower, to Lawyers Title Realty Services, Inc, as Trustee, for benefit of Barclays Capital Real Estate, Inc., Commonwealth Reply Supp. Mot. Dismiss, ECF No. 22, Ex. A.

pay, first, the plaintiff's Mortgage Lender and the Mezzanine Lender at least the first

$135,000,000 of any proper claim and, then, the plaintiff any amount in excess of the amount

owed to both Lenders up the total amount of the insurance of $172,000,000.[10] Defendant

Commonwealth asserts that the primacy of both Lenders' claims makes them "necessary

parties" to adjudication of Count I of the Complaint against it for breach of the Owner's

Policy.[11] Commonwealth P. & A. Supp. Mot. Dismiss, ECF No. 8, ECF No. 8, at 2-3. In these

circumstances, unless joinder is required, Commonwealth argues that (1) "the Court cannot

grant complete relief among the parties" since, under the Owner's Policy, Commonwealth

cannot pay any claim to plaintiff without paying the first $135,000,000 to the Mortgage Lender

and some unknown amount to the Mezzanine Lender, *id.* at 3; (2) the Lenders will be unable to

protect their own interests if Commonwealth is required to pay a judgment in the instant suit to

the plaintiff rather than to the Lenders, *id.*; and (3) the Lenders would be able to assert claims

against Commonwealth and thereby subject the latter to multiple suits, with "a substantial risk

of incurring multiple and possibly inconsistent obligations, when pursuant to its contractual

obligations, Commonwealth is obligated to the lender for the first $135 million of any proper

claim and then to Plaintiff for the amounts in excess of $135 million, up to $172 million." *Id.*

Each of these arguments is addressed *seriatim* below.

---

[10] Commonwealth asserts that the Mortgage Lender is due the "proceeds of any insurance policies until the Mortgage Lender's $135 million loan is satisfied in full" and the Mezzanine Lender is due "amounts otherwise payable to the insured under this [Owner's] policy, not to exceed the outstanding indebtedness under the Mezzanine loan, the amount of which is unknown." Commonwealth Reply Supp. Mot. Dismiss, ECF No. 22, at 3.

[11] Both parties use the terms "necessary" or "indispensable," rather than "required," person as used in the current version of Rule 19. *Vann v. Kempthorne*, 534 F.3d 741, 745 (D.C. Cir. 2008) ("The words 'necessary' and 'indispensable' have become obsolete in the Rule 19 context as a result of stylistic changes to the Rule"); *Pimentel*, 553 U.S. at 862-63 (2008) (noting the replacement in Rule 19 of "necessary" with "required," and the deletion of "indispensable" and observing that "the term 'indispensable party' might have implied a certain rigidity" that would be in tension with this case-specific approach. The word 'indispensable' had an unforgiving connotation that did not fit easily with a system that permits actions to proceed even when some persons who otherwise should be parties to the action cannot be joined."); *Orff v. United States*, 545 U.S. 596, 602-03 (2005) ("Though the Rule no longer describes such parties as "necessary," "necessary party" is a term of art whose meaning parallels Rule 19(a)'s requirements.").

First, neither of the plaintiff's Lenders is required for the Court to grant complete relief among the parties to this action. The Complaint in Count One alleges that Commonwealth has breached its obligations under the Owner's Policy, to which only the plaintiff and Commonwealth are in direct privity. Commonwealth's relationship with the plaintiff under the Owner's Policy is different from its relationship with the Lenders. Indeed, payment of any policy proceeds to the plaintiff's Lenders is entirely contingent upon whether plaintiff's claim under the policy is viable and has merit. In other words, if plaintiff's claim against Commonwealth is not sustained, the Lenders are entitled to none of the proceeds. *See, e.g., Wometco Home Theatre, Inc. v. Lumbermens Mut. Cas. Co.,* 468 N.Y.S.2d 625 (N.Y. App. Div. 1983) ("[A]'loss payee' is not itself an insured under the policy; it is merely the designated person to whom the loss is to be paid. It is established that such a loss payee may only recover if the insured could have recovered."). A loss payee is "a mere appointee to receive the proceeds to the extent of his interest." *Granite State Ins. Co. v. Employers Mut. Ins. Co.,* 609 P.2d 90, 92 (Ariz. Ct. App. 1980) (quoting 5A J. Appleman, Insurance Law and Practice § 3335).

The fact that if the plaintiff's claim against the defendant Commonwealth is successful, the plaintiff's Lenders may be entitled to payment from the proceeds of the Owner's Policy, does not mean that relief is incomplete or inadequate among the existing parties. *Accord Bedel v. Thompson*, 103 F.R.D. 78, 80 (S.D. Ohio 1984) ("The 'complete relief' provision of Rule 19 relates to those persons already parties and does not concern any subsequent relief via contribution or indemnification for which the absent party might later be responsible."). Joinder of the Lenders as parties is simply "not integral to the fair disposition of the contract claims at issue," and they therefore are not required to be joined. *See OAO Healthcare Solutions, Inc.,*

394 F. Supp. 2d at 20 (joinder of OPM not required in breach of contract action, even though agency was responsible for plaintiff's termination and evaluation of plaintiff's performance under subcontract); *Sorrels Steel Co., Inc. v. Great Sw. Corp.*, 906 F.2d 158, 168 (5th Cir. 1990) (when complete relief, including damages, can be provided, absent person is not indispensable).

Second, defendant Commonwealth raises concern over impairment of the plaintiff's Lenders' ability to protect their interests in the Owner's Policy proceeds if they are not joined. Since any interest these Lenders may have in the policy proceeds is wholly contingent on the success of the plaintiff's claim, the Lenders' interests are not impaired but rather protected by the fact that the plaintiff is asserting a claim in this lawsuit. The case of *Markel American Ins. Co. v. Cockrell*, No. 06-cv-603, 2008 U.S. Dist. LEXIS 8085 (M.D. La. 2008), which is relied upon by the plaintiff, is particularly apposite for the proposition that a loss payee in the position of plaintiff's Lenders is not a required party. In *Cockrell*, the plaintiff insurance company issued an insurance policy to the defendant for a boat, which subsequently crashed while the defendant was operating it. *Id.* at *5-6. The plaintiff insurance company then filed a declaratory judgment action against the defendant insured seeking a declaration that any damage to the boat was excluded under the policy due to the insured's operation of the boat while intoxicated. *Id.* The insured counterclaimed for damages. *Id.* at *2. The plaintiff sought dismissal of the counterclaim for failure to join the lender bank, which was "listed as a mortgagee under a loss payable clause contained in the insurance policy." *Cockrell*, 2008 U.S. Dist. LEXIS 8085, at *7. The plaintiff insurance company argued, similarly to Commonwealth in the instant matter, that without the absent mortgagee, complete relief could not be obtained and the insurance company "may be subject to additional, inconsistent lawsuits." *Id.* at *6. The court rejected these

grounds, noting that the "mortgagee is only a conditional appointee of the mortgagor to receive part of the proceeds in case of loss," and "recovers solely on the right of the mortgagor." *Id.* at *7. The court found that the lender bank's "interests are derivative of the [insured's] rights under the insurance contract, and as such, the [insured's] assertion of rights under the policy adequately protects [the lender bank's] derivative interest and shields [the insurer] from independent lawsuits by [the lender bank]." *Id.* at *8-9. As a result, the court denied the insurance company's motion to dismiss the counterclaim for failure to join the lender bank as an indispensable party under Rule 19. *Id.* at *9.

Similarly, here, the plaintiff's Lenders' interests in the Owner's Policy at issue are entirely derivative of the plaintiff. If the plaintiff has satisfied its debts to the Lenders, the plaintiff's Lenders have no interest whatsoever in the Owner's Policy, let alone an interest that would be unprotected in their absence.

Finally, defendant Commonwealth's assertion that it may be subject to multiple and inconsistent obligations to pay the plaintiff in this lawsuit and then the Lenders in some other lawsuit is incorrect. At the outset, this presumes that the plaintiff will not satisfy its debts, prompting the Lenders to turn to Commonwealth directly for payment from the policy proceeds. This presumption is purely speculative and, in any event, the mere risk of potential litigation is not enough to require joinder. *See FDIC v. Bank of New York*, 479 F. Supp. 2d 1, 12 (D.D.C. 2007) ("'In order to qualify as a necessary party under Rule 19(a), the possibility of being subject to multiple or inconsistent obligations must be real, and not a mere possibility.'") (quoting *TRT Telecomm. Corp. v. W. Union Tel. Co.*, No. 87-cv-2760, 1988 WL 19259, at *2 (D.D.C. 1988)); *Daudert v. State Farm Fire & Cas. Co.*, No. 06-cv-13269, 2007 U.S. Dist. LEXIS 22764, at *12 (E.D. Mich. Mar. 29, 2007) (absent mortgage company "is not a

necessary party" warranting dismissal of insured's suit against casualty insurance company when "if, and only if, [insureds] default on their loan payments will [mortgage company] be in a position to bring suit against Defendant. This potential for litigation is too attenuated to require joinder at this juncture. Complete relief can be accorded without joining [mortgage company] to this action.").

Whether the plaintiff has any continuing indebtedness to the Lenders and, if so, the amount of such debt, is entirely unclear from the current record. The fact that both Lenders provided Commonwealth with notice of potential claims under the Owner's Policy and Loan Policy in January 2009, over two and one-half years ago, does not mean they continue to carry any of plaintiff's debt that might be subject to payment from the proceeds of the Owner's Policy.[12] Should it become clear during the course of discovery that the Lenders have a continuing interest in the proceeds of the Owner's Policy, reconsideration of their joinder may be appropriate. To the extent that the plaintiff has continuing indebtedness to the Lenders that may be subject to satisfaction from the proceeds of the Owner's Policy, the Lenders may seek those funds directly from the plaintiff without the necessity of being parties to the instant lawsuit.

Moreover, defendant Commonwealth should have no concern regarding a "double" or "multiple" recovery against it because liability under the Owner's Policy is limited to the amount owed to the plaintiff. Commonwealth P. & A. Supp. Mot. Dismiss, ECF No. 8, at 3. In other words, defendant Commonwealth owes no more to the plaintiff's Lenders than is owed to

---

[12] The plaintiff is vague, at best, on the amount owed under the mortgage and Mezzanine Loan, stating only "while the exact amount of [plaintiff's] remaining indebtedness to Barclays Finance, if any, remains unknown, it is certainly not $135,000,000," and regarding the Mezzanine Loan, "the amounts paid by the purchaser at the . . . foreclosure auction must be applied against underlying indebtedness." Pl.'s Opp'n Mem., at 5. The plaintiff's own purported lack of clarity about the precise amounts, if any, that it owes to its Lenders is puzzling, but resolution of the exact amount, if any, of plaintiff's continued indebtedness to the Lenders is not necessary for resolution of this motion.

the plaintiff. In this respect, the plaintiff is sole possessor of the contractual claim against Commonwealth. *See Primax Recoveries, Inc. v. Lee,* 260 F. Supp. 2d 43, 51 (D.D.C. 2003) (holding that joinder was not required where plaintiff was the "sole possessor of the rights being asserted" and hence no multiple or inconsistent obligations could arise). Should the plaintiff have any remaining indebtedness to the Lenders, and Commonwealth is found liable to pay proceeds under the Owner's Policy in excess of the $141,114 to which it concedes liability, Commonwealth Cross-Claim, ECF No. 15, ¶ 21, it may interplead that amount, in accordance with the terms of the Mezzanine Endorsement for payment to the plaintiff or Lenders, as appropriate and at no cost to itself. Under the Mezzanine Endorsement, Commonwealth is entitled to payment of the costs, including attorney's fees, for all such interpleader proceedings.

Defendant Commonwealth has not shown that the plaintiff's Lenders are required parties to this action and, thus, no inquiry under Rule 19(b) is necessary. *See Temple v. Synthes Corp.*, 498 U.S. 5, 8 (1990) (when Rule 19(a) threshold requirements not satisfied, Rule 19(b) analysis not necessary).

## III.    CONCLUSION

Defendant Commonwealth has failed to establish that the plaintiff's Lenders are required parties to this action and, therefore, its motion to dismiss under Rule 12(b)(7) for failure to join a party under Rule 19 is DENIED. An order consistent with this memorandum opinion will be entered.

**DATED:  AUGUST 3, 2011**

/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge